Have you reserved time, or do you seek to reserve time, Counsel? I did reserve three minutes. Okay, that'll be granted, and you may proceed. May it please the Court, my name is Teresa Bekvar, and I represent the plaintiff's appellants and the members of the Certified Collective Action. This appeal concerns whether Bayada paid its home health clinicians a valid salary as defined under FLSA and the Pennsylvania Minimum Wage Law. In most cases, the answer to this question is simple. The test for a salary, after all, is whether an employee receives a predetermined amount each pay period that does not decrease based on the quality or quantity of work performed. Accordingly, the salary basis inquiry usually begins and ends by looking at an employee's paychecks. If the pay is the same each period, no matter how much or how little the employee works, then the employee is paid a salary. That is exactly what the district court did here. But in this case, that was a reversible error. Can you take us to Section 541.603A in the Code of Federal Regulations and explain to us the meaning of the following language? As I understand it, well, I'll just read it and then have you tell me how we ought to understand it. It says, an employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis. An actual practice of making improper deductions demonstrates that the employer did not intend to pay. Is this a question of subjective intent? There's a fact question in here. And if it is a question of subjective intent on the part of BIATA, is that answered on this record in some fashion that's definitive? I think subjective intent does play into this consideration. BIATA's pay plan is complicated, and it doesn't look like an hourly pay plan or a salary pay plan. It has a lot of different moving parts to it. And one of the questions underlying that is, what was BIATA trying to do here? Was BIATA trying to give people the same amount of money no matter how much they worked? Or are they trying to give them less based on working less and more when they worked more? Is that more of an hourly, more like an hourly pay plan? Here's what I'm asking is because if intent matters, and it looks saying it does, at least in the regulation, does the fact that they say actual practice demonstrates intent, is that saying that actual practice is the only way you show intent? Do you follow what I'm trying to ask you? I think so. I don't think it is the only way to show intent. An actual practice, if we could come up here and say when a clinician didn't work their 25 visits in a week, they worked 24 visits, they docked them $100. That would be an actual practice, and that would be an open and shut case. That's not the exact facts here. What they did was some creative bookkeeping to reduce, to actually deduct clinicians' salary, but make it look like it stayed the same. Do you have any evidence other than their practices, which are in the record on the summary judgment record, that they intended to not pay employees on a salary basis? That is, other than the record of what they were actually doing. There was what they were actually doing and what the employees believed they were doing, how they understood their salary. That doesn't tell us a bit about their intent, does it? I can believe bad things about you, which I don't, but I could. That doesn't speak to your state of mind, does it? Right, right. So we're confined to the record you developed on summary judgment about what they actually did, correct? That is correct, Your Honor. And the question is, what they actually did, what did that mean, and what did that reflect? It's important to note here that BEATA bears the burden to prove that an overtime exemption applies here. It's not plaintiff's burden to show that this unique pay plan was not a salary, only to demonstrate the genuine questions of material fact with regard to whether the salary basis test is met. And that's where I'm saying here that there are all of these moving parts in this plan. Since we're looking at what they actually did, maybe I should ask it this way. Does this come down to a single question, and that is whether or not paid time off is the same as salary when you're asking about, for purposes of the FLSA? That's one of plaintiff's arguments, is that if you start with that question, And the question, paid time off in this context is, it's not, it is part of vested compensation. Okay, and the legal authorities that say that it isn't, that it's a fringe benefit and not a salary, what do we do with those? I think the context matters. I think in a normal employment situation where you pay employees, you know, for example, a law firm, you pay your attorneys a salary, and then you give them a benefit like paid time off. Those are separate. And the employer can offer that benefit, or the employer can take that benefit away. But the salary still stays the same. Here, that's not what Bayauda did. They gave them the salary. They gave them the paid time off, and they said, this is a part of your compensation. If you do not take time off, then you get money for this time off. That is your absolute right, and it's protected by Pennsylvania law. All right, well, let's stick with the FLSA and not Pennsylvania state law for a minute, okay? Under federal law, well, the facts of this case, my impression was, and certainly this was the district court's impression, that the salary portion of Bayauda employees was never reduced. That paid time off was reduced, but once they hit zero on paid time off, they still got their salary regardless of whether they met their production metrics. Is that not correct? Am I misunderstanding the record? That is Bayauda's argument. That is it, and that is what the district court held. Yeah, but I'm asking whether that is what the factual record shows, that they never docked people's salary portion. They docked the PTO, and that was it. Is that factually accurate? That is the way the facts were characterized. We would disagree with that because what we're saying is … I'm pressing you on this because if there's a material dispute of fact, we need to know that, but if you can't point to something in the record that shows that's inaccurate, then it appears that that's what the factual record is set, and they never did that. So can you point us to somewhere in the record where it shows they did dock somebody's salary? They didn't just take them down to zero on PTO. They hit their salary, too. Well, we're saying that this is an unlawful reduction in salary because what's happening here is if you give a child an allowance and you say your allowance is $10, and then they do their job. At the end of the week, you give them $8, and you say here's your allowance, $8, and then you take $2 out of their piggy bank and say here's the rest. Now you've got $10. That's your allowance. We're saying that is what BEATA did with their salary. They are reducing their salary obligation and having – I'm sorry. That assumes the conclusion, right? I mean, you're saying that PTO is part of salary, period, and their assertion is PTO is not part of salary. There was a salary, and there was PTO, and we told people which was which, and we reduced their PTO, but we never reduced their salary. That's the argument they're making, and it sounds like you're not disputing that that's factually accurate, but you are saying that the PTO rightly should be considered salary. Am I understanding the record and your argument? Yes, yes, that is correct, and part of the reason why PTO is treated differently here than the other cases that have held that, hey, it's just salary fringe benefits, not the same, is because the PTO deductions that BEATA made was not for the intended purpose of paid time off. It was not occasioned by these individuals being absent from work. They often worked more than 40 hours in a week and still suffered a PTO deduction. So now we're saying that this is penalizing individuals who are working a full work week, and that's not the intended use of PTO. Can you speak to the four-picture argument that your opposing counsels made? They say that the arguments you're now making about the Pennsylvania law, the PMWA protections, shouldn't be paid attention to because at the district court level Ms. Higgins did not dispute that the FLSA and the PMWA protections were coextensive. That's an argument they've made. Can you respond to that, please? Yes, Your Honor. We did make those arguments at the district court level in the briefs, and we were able to point to where we made those arguments. I think where the disconnect happened was the district court judge, in her opinion, said that the plaintiffs had waived that argument, which was a misstatement. We did make those arguments in the briefs. Well, I mean, to be fair, you pointed out they're a little different. And one of the questions we asked you to address, and I'm going to ask you to address it right now, is, all right, if in fact it is different, I guess that the PMWA defines wages as including paid time off. What is the standard, then, we should be applying to the PMWA? Right. Well, I want to clarify, first of all, the state wage law that explicitly defines wages to include fringe benefits is the Pennsylvania Wage Payment and Collection Law, not the PWMA. But the PWMA similarly defines wages very broadly to include compensation due to any employee by reason of his or her employment. Paid time off would be that. on a schedule based on how much they work. So that is compensation due to them by reason of their employment. But let's run this out, then, analytically. Does this call for another type of analysis, then, or a different analysis than the regular FLSA analysis? I think to the extent that, you know, this Pennsylvania has adopted a more protective standard and a more broad definition of wages for employees, it's a more protective standard also under the salary basis test. I mean, both statutes, the Pennsylvania statute follows the FLSA salary basis test, but they define wages more protectively. So therefore, you know, the definition here with regard to PTO should also be more protective. Okay. All right. Thank you. Thank you. We'll hear from you on rebuttal. Please, the Court. Tom Collins, representing Bayada Home Health Care, Inc. And since the Court had specifically directed two questions, I'm going to pick up where the opposing counsel left off and just address those right now. With respect to the Pennsylvania Minimum Wage Act issue, the citation in the papers that the appellants filed is actually to the Pennsylvania wage payment and collection law, not the Pennsylvania Minimum Wage Act. There's a clear distinction between those two acts in the sense that the Pennsylvania case law is abundantly clear and robust that the Pennsylvania wage payment and collection law creates no substantive statutory rights. It simply creates an enforcement mechanism whereby an aggrieved employee, who may be entitled to accrued vacation by way of example upon termination of employment, has a statutory right to sue to recover that accrued vacation and then can also recover attorney's fees and things like that. So it creates no substantive rights whatsoever. If one looks at the definition of compensation in the Pennsylvania Minimum Wage Act, there is no reference whatsoever to fringe benefits. That's found at 43PS333.103D. It provides simply that compensation due to any employee by reason of his or her employment payable in legal tender of the United States or checks on banks convertible into cash on demand at full face value subject to such deductions, charges, or allowances as may be permitted by regulations of the secretary under Section 9. Does the law, the enforcement mechanism law, not provide any useful information in understanding the Pennsylvania Minimum Wage Act? That PMWA, is that not informed at all by what other statutory provisions say about wages? Because if that other statutory provision, which I don't know the name of, you said it a minute ago, what is it? The Pennsylvania Wage Payment and Collection Law. So that one, does that one say pay time off? That's included and should be considered to be wages. It does. As part of the... Does that not, should that not inform our understanding of what the meaning of wages is within the Pennsylvania Minimum Wage Act? I don't believe it does. And for two reasons. First, I'd add before I move on from the Pennsylvania Minimum Wage Act that there are no regulations issued there under. So it's simply the definition of wages contained in the act. With respect to the Wage Payment and Collection Law, there certainly is interplay in the two acts in the sense that the Wage Payment and Collection Law authorizes an employee to recover any wages properly due under the Pennsylvania Minimum Wage Act. So if the enforcement mechanism says end wages includes paid time off, wouldn't that make you think, oh, this doesn't create any new rights. It's only talking about the substantive rights that exist under the PMWA. And therefore, under the PMWA, wages must include paid time off. No, I would take a different view of that in the sense of wages under the Pennsylvania Minimum Wage Act. The Pennsylvania Minimum Wage Act establishes obligations with respect to minimum wages and overtime pay and creates the exemptions with respect to the executive, the administrative, and the professional. That's a separate entirely statutory scheme. The Wage Payment and Collection Law, and I think the case law, again, on this is robust, that it creates no substantive rights. If you look at the language of the cases. I'm not talking about substantive rights. I'm just talking about whether it's saying things that should help us understand the meaning of wages within the PMWA. But do we have to be thinking about this at all? You've taken the position that it's forfeited. It has been forfeited. You want to answer their assertion that it wasn't forfeited. We argued this in district court. District court just misunderstood it and got it wrong when they said we agreed it was coextensive. We didn't say that. We told her differently. With all due respect to opposing counsel, our position is that the issue has been waived or forfeited at the district court level. Judge Wilson, in her, I believe it's footnote number 11, in her opinion, notes that the plaintiffs at the time, now appellants, did not contest the position that. That's true, but your adversary pointed out places where they actually did discuss it. I mean, it's not a full brief point or anything, but at least things close to this current argument are in the brief, aren't they? Not to my knowledge, Your Honor. They're not. I don't believe that this issue was contested at the district court level below, certainly not in any meaningful manner. Was it adequately briefed here? What's your position on what was said to us here? I believe that it was briefed here, but I do not believe that it was briefed below adequately. So your position is it's the same test for both? Our position is that it is the same test for both, regardless of whether or not the issue has been forfeited or waived. It's the same analysis for both because, again, the wage payment collection law creates no substantive rights. I'd like to kind of address what was going on, if I could. With respect to Bayauda's payment structure, it is very simple and straightforward. They offer visits to clinicians, and clinicians choose how many visits they want to take in a given week, and a fixed predetermined salary is established for whatever number of visits the nurse, I'll use nurse by way of example, wishes to take. There's no evidence below whatsoever that that fixed salary was reduced in any circumstance with any employee. That is a fact which is not in dispute as acknowledged and recognized by the district court. They do set folks up with these productivity points, right? I mean, this is, you're supposed to go in and tell Bayauda, this is what I'm shooting for, this number of points, right? That's absolutely correct. And those points are geared to a time. It's like every point is 1.33 hours of work, right? Yes, but not all. Why isn't that just a fancy way of saying you're getting paid by the hour? Because it's not. Let me be more illustrative with how I'm explaining that. This is not abnormal or out of the ordinary in any respect, but by way of example, when an associate comes into a law firm and then chooses to work a full-time schedule, the law firm says, well, that's about 40 hours a week. It's not necessarily 40 hours a week. It's what's planned to be 40 hours a week, but it's not 40 hours a week. If the associate comes into the law firm and says, I'd like to work half that schedule, 1,000 hours a year, then the salary is adjusted accordingly to reflect the work that's been promised to be done. While Bayauda has estimated at the start of the relationship that a visit is about 1.33 hours for purposes of calculating the PTO accruals and things of that nature, that does not mean that every visit is 1.33 hours. It's an estimation that if a full-time RN wishes to be compensated under the full-time with benefits track, that they're going to work 30 visits per week and that those 30 visits per week equate to approximately 40 hours. But that, like with any salaried employee, does not mean that it's going to take exactly 40 hours. It might take 45 hours to do 30 visits a week. It's the productivity expectation, which gets to the point of, from our perspective, this case really turns on a singular issue. And that is, is a reduction from a paid time off a 10 or equivalent to a reduction in compensation? And from our perspective, and we've briefed these cases on, I believe it's page 39 through 41 in our papers, there is not only the clear guidance from the Department of Labor that paid time off is not compensation that can serve to reduce compensation to eliminate the exemptions under the Fair Labor Standards Act. The Department of Labor's position on this has been clear. It's robust. It's repeated. That the other circuits that have addressed the issue have come to the same conclusions. And by the other circuits, I mean we've cited to the Litz case, the Coates case, and the Frye case. We read your briefing. Speak for a moment, if you would, about the factual record that the plaintiffs have developed with respect to what they were told. In other words, they say, we were told and we understood that our salary was going to be reduced. They led us to believe that PTO was part of our salary and that overall salary would be reduced if we didn't hit our numbers. Is that meaningful in any way in the analysis that we should be undertaking? Our position would be, no, it's not. For the reason that the Department of Labor has modified the test such that threat of deduction is not the standard anymore under the Fair Labor Standard Act. It requires actual deductions. So while, again, we would, I guess, dispute the fact that what someone understands or doesn't understand is outside of the prerogative of the employer. That would be a material dispute of fact unless you're right about what the regulations say, right? In other words, if you said, we never said that to them, and they said, no, they did say that to us. They said, your salary is going to be reduced if you don't hit your numbers. Well, I would quibble with how you're phrasing that in the sense of I don't believe that there's anything in the record that says they told us that our salary was going to be reduced if we didn't meet our productivity points. It was that our understanding was that if we didn't meet our productivity points, our salaries would be reduced. And, again, that would be... Since we're looking at this in a light most favorable to the non-movement, wouldn't you say that it was our understanding that that's how this worked? If we're drawing inferences that we would have to infer, they drew that inference from things that Bayada told them, not that they just had a seance. Like, they didn't, like, pull it out of the air. They understood it from some communication that was made to them by the company. Isn't that the favorable inference to be drawn from the record? That would be the most favorable inference to draw from the record. Which we have to do, right, at this stage in the proceedings, correct? Agreed. And my reaction to that would be that, again, threat of deduction no longer qualifies for revocation of the exemption. And under current law, it's got to be an actual deduction. And, again, to be crystal clear with everybody, there was fulsome discovery in this case, and no one has produced any evidence from the plaintiff, now appellant's side, showing that there were any improper deductions from salary. That by way of specific examples, with respect to Ms. Higgins, her salary was set at $1,100 a week, and that she received her guaranteed minimum salary, which was reflected on her pay stub as guaranteed salary, each and every week, and that that carried through with all of the other putative class members. But this case really revolves around whether or not BEATA's reduction of accrued paid time off constitutes a reduction in compensation. So let's go to the second question we asked you about. Can an employer deduct from PTO when there are no absences without changing an employee's status as salaried under the FLSA? That's the second question. The second question, yes. I'll answer that two ways. One, yes, because a reduction in a PTO fringe benefit is not sufficient to alter the exemption, because it's not a reduction in compensation. It's a reduction in the fringe benefit, and, again, the case law and the Department's position on that are clear. But I take it a step further, Your Honor, and that is that the question presupposes that there's no absence here, and we believe there is an absence here. If you say you're going to do 30 visits, that means you're going to go out in the home and visit with 30 patients. That's no different than a nurse who reports to a hospital saying, I'm going to leave, you know, at noon on Friday and not cover the back half of my shift. It is, in fact, an absence. But what if they didn't actually do the right number of visits, but they exceeded 40 hours? Just saying, I mean, we assume that whatever going over to, you know, Mrs. Jones' house took three hours, we expect it to take one. And that's entirely plausible, and, again, giving the most favorable inference to the plaintiff's case, let's assume that that is possible, that we had a nurse like Ms. Higgins who had a 30-point commitment and ended up working 43 hours in the week, even though she only did 29 points. Again, it's the fundamental issue or flaw in the plaintiff's case, and that is that a reduction in PTO because there is no obligation on the FLSA to provide PTO. And by PTO, obviously, I mean paid time off. There's no obligation on the Pennsylvania Minimum Wage Act to provide PTO. Hence, the employer is essentially free to do what they want with the PTO in that regard or in that vein. So I'm almost out of time here, so I would like to just briefly sum up. Again, there's no factual dispute that everybody got a guaranteed minimum salary. There's no factual dispute that there were not any improper deductions to compensation. And all we have here are reductions to PTO, and our position would be that the case law is compelling on that front and that the Pennsylvania Minimum Wage Act has no different, whether it's been forfeited or waived, the Pennsylvania Minimum Wage Act does not establish any different rules. I've got four seconds left, which if anybody has a question, I'm happy to take it. Does it make any difference whether the clinical supervisors had discretion over deducting a clinician's PTO for failure to make the weekly quota? There is testimony that it was handled in different ways, usually with the intent to try to make sure that the clinician was not getting shortchanged. I don't believe it has. It didn't seem to be a standard way of dealing with this. And I would agree with that, other than there was a standard way of dealing with the reduction, any reduction in pay, and that is the reduction in pay did not occur. But absolutely there was discretion amongst not only the supervisors, the clinical supervisors, but also the actual clinicians to go back to the supervisor and say, hey, looks like I'm going to be short on visits this week. Do you got anything for me? And in those instances, I think what you're probably getting at is that the clinical supervisor had the discretion of, if you were ready, willing and able to work, they didn't take your PTO. But that is, A, favorable to Bayauda's position, but, again, it doesn't fundamentally alter the analysis or the issue in that a reduction in PTO is not a reduction in compensation. It serves to destroy the exemption. Thank you. Thank you. I know you've got things you want to get to on your time, but I'm really concerned about this forfeiture point. Because if you're right, you didn't forfeit it, then, you know, that might require some different treatment and maybe a different outcome in the case. But as I looked at your briefing, I only saw the following. You say, this is the only thing I found in the opening brief about Pennsylvania minimum wage, and I just want it being different. You say, you start on the second to the last page of your brief before the conclusion, that similarly, you've just gone through FLSA stuff, and you say, similarly, Pennsylvania wage statutes define wages to include all earnings of an employee, including furnished benefits. Then you go down and you say, because Pennsylvania law is even more protective than the FLSA and explicitly defines wages to include earned vacation time, there is an even stronger argument that PTO deductions not occasioned by an absence from work constitute unlawful wage deductions that violate salary basis requirements of the Pennsylvania law. That's it. There's not a citation except to A-15 in the record, no cite to the law. And in your reply brief, it shows up in one spot, in a bullet point on page three, where you say, under the more protective provisions of Pennsylvania law, it explicitly defines wages to include earned vacation time with a citation to the Pennsylvania statutes. Is that enough to preserve an argument and to put it before this court? I'm struggling with whether we've got enough to actually even get into the Pennsylvania law at all here. I agree that it could be more developed. And I think the decision not to develop that argument more was because defendants didn't address it in their response. They just said it was simply waived. And, you know, in the footnote in the reply brief, we said, you know, we don't understand why Beata is saying we waived this argument. You know, here is a citation to the record below where we made it. Yeah, but the record below where you made it is a footnote. Exactly. Yeah, so you made a footnote argument to the district court. The district court read it and said they're not disagreeing. And then in front of us, the whole of it is what we've just described. But your position is still, it was fairly in front of the district court and it's fairly in front of us. That is correct, Your Honor. All right. Thank you. I wanted to address counsel saying that the case law and the Department of Labor position is clear here. It is not clear. The case law and the Department of Labor have held that pay time off can be reduced for partial day absences. That is what every court has held. No court has confronted this exact situation that this court deals with today, where pay deductions are being made as a penalty for not being productive enough. The district courts held, at the very least, whether the effect of falling below the point expectation can be construed as equivalent to an absence, was held that it could be construed as equivalent to an absence. That was not for the district court to decide. That is a question of fact that's right for the jury to decide. We have facts that go saying that clinicians were working more than 40-hour weeks. They were missing their visits not because they were lazy and wanted to go home early on a Friday, but because they show up to their patient's house and their patient isn't home. And so they were required to either find a way to make that up or head into the office and do clerical work, which is really beyond the scope of what their job duties are as a clinician. That holding alone, I think, is a basis to reverse the opinion of the district court. Which specific holding are you identifying when you say that? I'm sorry. Where the district court found that the effect of falling below the point expectation can be construed as equivalent to an absence. If it said that, well, if it didn't result in a reduction in the salary, but only in a reduction, and I understand only, don't misunderstand my question. I'm not unsympathetic to people who feel like, hey, you're stealing my time off. And that's real and that's meaningful to me. I get that. But if it is purely hitting their PTO and not hitting their salary, why is what the district court said there legally significant if the issue is framed as PTO is salary or it's not? Because these individuals had a property right in their PTO. It's not just something that the bay audit could take away because it was money to them. It was their compensation. It goes back to the compensation question. Okay. Thank you. Thank you. Okay. Thank you, counsel. Thank you. We'll take the case under advisement. We thank counsel for their excellent arguments, both written and oral today.